**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

STEPHANIE BRADLEY, Personal
Representative of the Estate of CLARK
BRADLEY, deceased,

                Plaintiff,

v.                              CASE NO. 02-73001
                              HONORABLE DENISE PAGE HOOD

CITY OF FERNDALE, et al.,

                Defendants.

_____/

**MEMORANDUM OPINION AND ORDER**

**I.      INTRODUCTION**

This matter is before the Court on Defendants City of Ferndale and Chief Kitchen's

Motion for Summary Judgment, filed on August 4, 2006.  On August 28, 2006, Plaintiff

Stephanie Bradley, Personal Representative of the Estate of Clark Bradley, deceased, filed a

Response to Defendants City of Ferndale and Chief Kitchen's Motion for Summary Judgment.

**II.     STATEMENT OF FACTS**

On July 22, 2002, Plaintiff filed the instant action pursuant to 42 U.S.C. § 1983, after her

father, Clark Bradley, committed suicide at the City of Ferndale jail.  Plaintiff asserted that

Defendants City of Ferndale, Chief Michael Kitchen, Officer Paul Simpson, Lieutenant Thomas

J. Thomson, Dispatcher Jason White and Cadet Wesley Crouse violated Plaintiff's decedent's

Fourth, Eighth, and Fourteenth Amendment rights, as well as various state law claims.

1

The facts of the instant matter have been thoroughly discussed by this Court, as well as the Sixth Circuit Court of Appeals. (*See* March 16, 2004 Opinion and Order, p. 1-2; *Bradley v. City of Ferndale*, 148 Fed. Appx. 499, 502-03 (6th Cir. 2005)  The Court will briefly state the nature of Plaintiff's Complaint.  On January 22, 2000, Clark Bradley was arrested by Defendant Officer Paul Simpson based upon an outstanding warrant.  Mr. Bradley was taken to the Ferndale Police Station by Defendant Simpson.  During his booking, Mr. Bradley commented to Defendant Simpson, "give me your gun so I can shoot myself," or something to this effect.  As such, Mr. Bradley was flagged as potentially suicidal, and before he was placed in a holding cell, his clothes and wallet were taken from him.  Defendant Simpson provided Mr. Bradley with two blankets, which Bradley later tore into strips and used to hang himself from a light fixture in his cell.  Plaintiff asserted that Defendants violated Mr. Bradley's constitutional rights by failing to adequately monitor Mr. Bradley, despite having knowledge of his suicidal tendencies.

**III.    PROCEDURAL HISTORY**

On June 3, 2003, Defendants City of Ferndale, Kitchen, Simpson, White and Crouse filed a Motion for Summary Judgment, asserting theories of qualified, absolute and governmental immunity.  On June 5, 2003, Defendant Thomson, who at the time was no longer employed by the City of Ferndale, and was represented by separate counsel, filed a Motion for Summary Judgment.  On March 16, 2004, this Court granted Defendant City of Ferndale's Motion for Summary Judgment as to Plaintiff's gross negligence claim only, the remaining Defendants' Motions for Summary Judgment were denied.

In its March 16, 2004 Opinion and Order, this Court held that Defendants Simpson, White, Crouse and Thomson were not entitled to qualified immunity because Plaintiff presented

2

sufficient evidence to create a genuine issue of material fact as to whether Defendants were deliberately indifferent to Mr. Bradley's serious medical needs, and whether Defendants acts were the proximate cause of Mr. Bradley's death.  Additionally, this Court found that Plaintiff presented sufficient evidence to create a genuine issue of material fact as to whether the City of Ferndale adequately trains its officers to monitor suicidal detainees.  The Court denied Defendant Kitchen's Motion for Summary Judgment because, at the time of oral argument, no discovery had been taken in regard to him, as such, his Motion was denied without prejudice.

On April 2, 2004, Defendants filed a Notice of Appeal.  On September 8, 2005, the Sixth Circuit Court of Appeals reversed this Court's denial of Defendants' Motions for Summary Judgment.  The Sixth Circuit Court of Appeals remanded the matter back to this Court to address Plaintiff's claims against Defendant Kitchen and the City of Ferndale.

## IV.     APPLICABLE LAW & ANALYSIS

### A.  Standard of Review

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact.  The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party has "the burden of showing the absence of a genuine issue as to any material fact."  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985).  In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party.  *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711

F.2d 1319 (6th Cir. 1983).  But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry to summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact.  "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).  Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact."  *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).

### B.      Defendants' Motion for Summary Judgment

Defendants argue that Defendant Kitchen is entitled to qualified immunity because Plaintiff concedes that Defendant Kitchen is not liable in his official capacity, and he cannot be held liable in his individual capacity.[1] Defendants further assert that the City of Ferndale must be dismissed because the Sixth Circuit determined that none of the Defendant-Officers violated Mr. Bradley's constitutional rights.  The Court agrees with Defendants as more fully set forth below.

---

[1] On December 7, 2006, this Court entered the parties Stipulated Order dismissing Defendant Kitchen from this action, as such the Court will not discuss Defendants' argument regarding Officer Kitchen. [**Docket No. 83**]

4

Notwithstanding Plaintiff's agreement to stipulate to the dismissal of Defendant Kitchen, Plaintiff asserts that based upon the City's failure to train its officers regarding known suicidal detainees, the City of Ferndale can still be liable even though the individual officers are entitled to qualified immunity.

### 1.     Municipal liability

Municipal liability will not lie unless "execution of a government's policy or custom . . . results in a constitutional tort." *Gregory v. Shelby County*, 220 F. 3d 433, 441 (6th Cir. 2000); *See also Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 56 L. Ed.2d 611, 98 S. Ct. 2018 (1978).   A municipality can be liable under § 1983 only where "its policies are the moving force behind the constitutional violation.  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). There must be "a direct causal link between a municipal policy or custom and the alleged constitutional violation."  *Id.* at 385.

Municipal liability can also occur when a municipality's or county's failure to train its officers demonstrates a risk that is "so obvious as to constitute deliberate indifference to the rights of its citizens."  *Gray v. City of Detroit*, 399 F. 3d 612, 618 (6th Cir. 2005); *See also City of Canton v. Harris*, 489 U.S. 378, 390 (1989)("[T]he need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.").  Municipalities have a duty not to ignore "obvious risks of suicide that are foreseeable." *Gray,* 399 F. 3d at 618.  However, "[p]re-trial detainees do not have a constitutional right for cities to ensure, through supervision and discipline, that every possible measure be taken to prevent their suicidal efforts."  *Gray,* 399 F. 3d at 619.  It should be noted that liability will not

5

attach where a sound training program exists, but it nonetheless is negligently administered, an individual officer is unsatisfactorily trained, or because an individual officer could have received better or more training. *See City of Canton*, 489 U.S. at 391.

However, where a plaintiff fails to demonstrate his constitutional rights were violated, "there can be no § 1983 liability on the part of a municipality for failure to train as a matter of law." *May v. Franklin County Commissioners*, 437 F. 3d 579, 586 (6th Cir. 2006). In order for liability to attach for a municipality's or county's failure to train, "[t]he identified deficiency in . . . a program must be closely related to the ultimate injury . . . ." *City of Canton*, 489 U.S. at 391. As such, Plaintiff "[m]ust still prove that the deficiency in training actually caused the police officers' indifference to [Mr. Bradley's] medical needs. *Id.* However,

> "[w]hile officials may not be liable under section 1983 because their actions (or failure to act) were not constitutional violations according to clearly established law at the time the actions took place, a municipality may nevertheless be liable if the actions complained of rise to the level of constitutional violations in light of present law. Stated another way, it is possible that city officials may be entitled to qualified immunity for certain actions while the municipality may nevertheless be held liable for the same actions.

*Barber v. City of Salem*, 953 F. 2d 232, 237-38 (6th Cir. 1992)(internal citations omitted); *See also Gray*, 399 F. 3d at 617)(internal quotations omitted)("When an officer violates a plaintiff's rights that are not clearly established, but a city's policy was the moving force behind the constitutional violation, the municipality may be liable even though the individual officer is immune.")

In other words, if the Sixth Circuit determined that Officers Simpson, White, Crouse, and Thomson violated Mr. Bradley's constitutional rights, but were nevertheless entitled to qualified immunity because Mr. Bradley's rights were not clearly established at the time of his suicide,

then the City of Ferndale may be liable under § 1983 if its policy was the moving force behind, and the direct causal link to the constitutional violation.

Notwithstanding the apparent clarity of the law in regard to the fact that a municipality cannot be liable under § 1983 without proof of an underlying constitutional violation, the Sixth Circuit has authored at least one opinion which analyzes the issue of municipal liability, even though it had determined that none of the individual defendants violated the Constitution.

In *Gray,* the Sixth Circuit correctly stated the law on the issue before this Court, that is: "When an officer violates a plaintiff's rights that are not clearly established, but a city's policy was the moving force behind the constitutional violation, the municipality may be liable even though the individual officer is immune." *Gray*, 399 F. 3d at 617(quoting *Barber*, 953 F. 2d at 238). Notwithstanding, the *Gray* court proceeded to analyze whether the City of Detroit could be liable under § 1983 using the "so obvious" standard set forth in *Harris*, even though it already determined that the defendant-officers had not violated the plaintiff's constitutional rights. The *Gray* court stated,

> [a]ssuming for the sake of argument that this Circuit permits a municipality to be held liable in the absence of any employee's committing a constitutional violation, the remaining question for us then is whether the City's policy makers' decisions regarding suicide prevention were themselves constitutional violations . . . .

*Gray*, 399 F. 3d at 617(emphasis added). This decision is at odds with other decisions of the Sixth Circuit which unequivocally hold that there can be no municipal liability where a plaintiff's constitutional rights are not violated. *See Watkins v. City of Battle Creek*, 273 F. 3d 682, 687 (6th Cir. 2001)(citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)(because the plaintiff failed to demonstrate that any of the individual defendants committed constitutional

7

violations, the court summarily rejected the plaintiff's argument that the city could be liable on a theory of failure to properly train); *See also Crocker ex rel Estate of Tarzwell  v. County of Macomb*, 119 Fed. Appx. 718, 724 (6th Cir. 2003)(unpublished)("[W]here there exists no constitutional violation for failure to take special precautions to prevent suicide, then there can be no constitutional violation on the part of a local government unit based on its failure to promulgate polices and to better train personnel to detect and deter jail suicides." *Id.* (*citing Barber*, 953 F. 2d at 240.)).   It is evident that the law of the Supreme Court and this Circuit is that a constitutional violation must be established before inquiry into any potential liability on the part of a municipality can be analyzed.

In an unpublished opinion, issued six months after the *Gray* court's decision, the Sixth Circuit denied both of the plaintiff's theories of municipal liability because the plaintiff failed to demonstrate that the decedent suffered a constitutional violation.  *Estate of Harbin v. City of Detroit*, 147 Fed. Appx. 566, 572-73 (6th Cir. 2005).   In *Harbin*, the plaintiff argued that the City of Detroit had a custom or policy of failing to provide adequate medical treatment to inmates, and that the City could be held liable independent of the defendant-officers' actions for its failure to train its officers and to monitor and screen detainees for health problems. *Estate of Harbin,* 147 Fed. Appx. at 569.   The plaintiff, as personal representative of her brother's estate, filed suit under § 1983 after her brother, Ricardo Harbin, was arrested and taken to the Detroit Police Department's Sixth Precinct on the night of August 28, 2000.  *Id.* at 567.  Mr. Harbin began experiencing, and repeatedly complained about, chest pains soon after his arrival at the precinct.  *Id.* 567-68.  He was taken to the hospital in the early morning hours of August 29, 2000,  his condition initially stabilized, but later deteriorated that afternoon when, "[h]e became

8

unresponsive and efforts to revive him failed." *Id.* at 568.

The relevant part of the *Harbin* decision for purposes of this matter is that the Sixth Circuit stated, "[i]ndeed, *Harris* makes clear that a municipality's failure to train is constitutionally irrelevant if the plaintiff failed to demonstrate a resulting injury." *Id*. at 572. The court further opined, "[a] municpality's failure to train may be the moving force behind a resulting injury *but cannot be an injury in and of itself*." *Id.* (emphasis added). The *Harbin* court also stated, "[w]e have repeatedly declined to examine whether a municipal defendant provided its jail officers with adequate training when the plaintiff-detainee failed to present sufficient evidence of an underlying constitutional tort." *Id.*[2] (citing *Crocker ex rel Estate of Tarzwell* 119 Fed. Appx. at 724; *Watkins*, 273 F. 3d at 687; *Napier v. Madison County*, 238 F. 3d 739, 743 (6th Cir. 2001).

**2.      The Sixth Circuit's Decision as to Defendants' Qualified Immunity**

This Court finds that the Sixth Circuit clearly ruled that Defendants did not violate Plaintiff's decedent's constitutional rights, and accordingly, inquiry into the second prong of the qualified immunity analysis was not warranted.  The Sixth Circuit stated, "[b]ecause the plaintiff has not established that the above defendants violated Bradley's constitutional rights, there is no need to determine whether the right violated was clearly established.  *Bradley v. City of Ferndale*, 148 Fed. Appx. 499, 511 (6th Cir. 2005).[3]  As such, the City of Ferndale cannot be liable as a matter of law based upon either a theory of failure to train, or for a policy or custom

---

[2]  The *Harbin* court neglected to address *Gray's* apparent departure from what the *Harbin* court deemed established precedent.

[3]  The Sixth Circuit found that Plaintiff failed to establish that any of the Defendants acted with a conscious disregard for Mr. Bradley's suicidal tendencies.  *See Bradley*, 148 Fed. Appx. at 508-11.

9

because the Sixth Circuit held that Defendants had not violated Mr. Bradley's constitutional rights. *See  May*, 437 F. 3d at 586.

Plaintiff is simply incorrect in asserting that the City of Ferndale can be liable notwithstanding the fact that no Defendant-Officers were found to have violated Mr. Bradley's constitutional rights.  Plaintiff asserts that her claim does not rest upon,

> the unconstitutionality of what the individuals did, but on the unconstitutionality of the City's policymakers in implementing and following a policy of inadequate training on suicide prevention that caused the officers to fail to take adequate precautions and deprive Clark Bradley of constitutionally adequate medical care under the Eighth and Fourteenth Amendments.

(Pl.'s Resp. to Defs.' Mot. for Summ. J., p. 16)  As discussed above,  Plaintiff's argument is without merit.

This Court will address the claim against the City of Ferndale notwithstanding the Sixth Circuit's determination that none of the Defendants violated Mr. Bradley's constitutional rights. (This is based upon the *Gray* court's decision to analyze, and discuss the potential liability of the City of Detroit, even though no officer was found to have violated the plaintiff's constitutional rights.)

A municipality has a duty to take reasonable steps to prevent the suicide of its inmates when they exhibit a propensity to commit suicide that is so obvious that a resulting suicide was foreseeable.  *See Gray*, 399 F. 3d at 616.  Municipalities are under a duty "to recognize, or at least not to ignore, obvious risks of suicide that are foreseeable."  *Id.* at 618. When the risk of suicide is obvious, "[t]he municipality has a duty to take reasonable steps to prevent the suicide." *Id.*  "Detainees have a right that city policies, training and discipline do not result in deliberate indifference to foreseeable and preventable suicide attempts."  *Id*. at 619.          The *Gray*

10

court's analysis of the City's potential liability is instructive for the purposes of the present motion.   The *Gray* court determined that any failure by the City of Detroit to train its officers regarding the prevention of suicides "did not rise to the level of choosing to ignore obvious risks of foreseeable suicide attempts." *Id.* at 619.   The plaintiff presented evidence of two prior jail suicides, but no suicides occurring in the Receiving Hospital cell, where the plaintiff's decedent committed suicide.   *Id.*   Based on the above evidence,  the Sixth Circuit rejected the plaintiff's argument that the city "failed to adequately discipline or enforce their policies with respect to monitoring . . . ." *Id.*

Similarly, in *Miller v. Calhoun County*, 408 F. 3d 803, 816 (6th Cir. 2005), the Sixth Circuit rejected the plaintiff's argument that the County of Macomb could be liable under a theory of deliberate indifference by failing to adequately train its officers on the medical needs of its detainees.  *Id.*   In reaching this conclusion, the *Miller* court noted,

> [t]here is no history of similar incidents at the Correctional Facility, nothing to show that the County was on notice, and nothing to show that the County's failure to take meliorative action was deliberate.

*Id.*  The present matter, likewise, lacks any evidence of similar incidents of suicide taking place at the Ferndale Police Station.  The record in fact establishes that no suicides had taken place at the station before Mr. Bradley's death.  Plaintiff has likewise not produced any evidence suggesting that the City of Ferndale's policy is unconstitutional.  Plaintiff has not presented any evidence on a policy or custom of the City of Ferndale that suggests deliberate indifference on the city's part, either to the risk that Mr. Bradley would attempt suicide, or to a general problem of suicide attempts by other detainees at the station.  *See Crocker ex rel Estate of Tarzwell*, 119 Fed. Appx. at 724-25. ) Plaintiff has failed to support her claim that in the absence of

unconstitutional conduct by one of its employees or agents, Defendant City of Ferndale is liable under § 1983 given the facts and circumstances of this matter.

### V.        CONCLUSION

Accordingly,

IT IS ORDERED that Defendants City of Ferndale and Chief Kitchen's Motion for Summary Judgment [**Docket No. 78, filed on August 4, 2006**] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

Dated: <u>April 9, 2007</u>                    <u>      /s/ Denise Page Hood        </u>
Detroit, Michigan                    UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 9, 2007, by electronic and/or ordinary mail.

<u>S/William F. Lewis                              </u>
Case Manager